IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| FRED DALTON BROOKS, | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No: 5:12-cv-00281** |
| | : | |
| WILLIAM POWELL, | : | **Proceedings Under 42 U.S.C. § 1983** |
| **Defendant.** | : | **Before the U.S. Magistrate Judge** |

## REPORT AND RECOMMENDATION

Plaintiff Fred Dalton Brooks filed a claim against Defendant Deputy Warden William Powell, alleging mistreatment in Spalding County Hospital while in Defendant's custody. Doc. 1. On October 19, 2015, Defendant Powell filed a Motion for Judgment on the Pleadings, arguing that Plaintiff failed to exhaust his administrative remedies as required by the PLRA. Doc. 86. In response, Plaintiff, through counsel, argues that Defendant's Motion should be denied for at least three separate reasons. Doc. 99.

Because Plaintiff's complaint is entitled to dismissal at step one of *Turner*, this Court need not proceed to step two or make specific findings of fact. Accordingly it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED without PREJUDICE** for failure to exhaust and Defendant's Motion for Judgment on the Pleadings (Doc. 86) be **GRANTED**. It is further **RECOMMENDED** that Plaintiff's Motion for Evidentiary Hearing be **DENIED**.

## I.        PROCEDURAL BACKGROUND: DISMISSAL, APPEAL, AND REMAND.

Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 on July 16, 2012, raising various claims against prison officials at Georgia Diagnostic and Classification Prison during a prison riot and subsequent stay at Spalding County Regional Hospital. See Doc. 1. Following a frivolity review of Plaintiff's Complaint pursuant to 42 U.S.C. § 1915A, the Court allowed Plaintiff's

Eighth Amendment claims to proceed against Defendants Humphrey, Bishop, and Powell. Doc. 21.

After the Court granted Plaintiff leave to amend his Complaint (Doc. 22), Plaintiff filed his Amended Complaint on December 11, 2012. Doc. 24. Plaintiff's Amended Complaint added Defendant McMillan as a party and provided additional factual allegations against all Defendants. *Id*. Plaintiff's Amended Complaint names Defendants in their official and individual capacities. *Id*. On January 4, 2013, Defendants Humphrey, Bishop, and Powell filed a Motion to Dismiss Plaintiff's Amended Complaint. Doc. 33. On February 15, 2013, Defendant McMillan filed a separate Motion to Dismiss Plaintiff's Amended Complaint. Doc. 39. Both Motions argued that Plaintiff's Amended Complaint should be dismissed for failure to state a claim and that Defendants enjoyed qualified immunity. See Docs. 33, 39.

Upon recommendation from the Magistrate Judge, the Court granted Defendants' Motions to Dismiss, finding that Plaintiff failed to allege sufficient facts showing that Defendants were deliberately indifferent to Plaintiff's safety, and that Defendant Powell enjoyed qualified immunity because clearly established law did not show that Defendant Powell's actions amounted to cruel and unusual punishment. See Doc. 45. Final judgment was entered on September 5, 2013. Doc. 55. Plaintiff filed a timely notice to appeal on September 27, 2013. Doc. 59; see also Notice of Appeal, *Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015) (No. 13-14437).

The Court of Appeals appointed counsel and heard oral arguments on March 19, 2015. Plaintiff raised two issues on appeal: (1) the District Court erred in dismissing Plaintiff's claims because Plaintiff alleged sufficient facts to state an Eighth Amendment failure to protect claim; and that (2) the District Court erred in finding that Defendant Powell was entitled to qualified immunity. See Appellant's Brief, *Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015) (No.

13-14437).

The Court of Appeals issued its opinion on September 3, 2015, affirming the Court's findings that Plaintiff's allegations were insufficient to support an Eighth Amendment failure to protect claim. See *Brooks v. Warden*, 800 F.3d 1295, 1298 (11th Cir. 2015). The Court of Appeals reversed the Court on its finding that Defendant Powell was entitled to qualified immunity, holding that Eighth Amendment violations can arise from "conditions lacking basic sanitation," and that Powell's conduct was " 'so egregious that no prior case law is needed to put a reasonable officer on notice of its unconstitutionality.' " *Brooks*, 800 F.3d at 1307 (citing *Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013)). Finally, the Court of Appeals made explicit the long-raised implication that a "prisoner plaintiff 'may seek nominal damages' despite his lack of alleged physical harm." *Brooks*, 800 F.3d at 1309 (quoting *Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007), abrogated by *Sossamon v. Texas*, 563 U.S. 277 (2011)). The Eleventh Circuit remanded the case to the District Court for further proceedings as to Plaintiff's "Eighth Amendment claim stemming from his alleged mistreatment in Spalding County Hospital, but only for nominal damages." *Brooks*, 800 F.3d at 1309. The court issued its Mandate on October 2, 2015. Doc. 81.

Following this Court's Order, Defendant Powell filed his answer on October 15, 2015, raising four specific defenses including the defense of exhaustion of administrative remedies. Doc. 84. On October 19, 2015, Defendant Powell filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that Plaintiff failed to exhaust his administrative remedies as to his Eighth Amendment claim against Defendant Powell. Doc. 86. Plaintiff, now represented by counsel, responded to Defendant's Motion for Judgment on the Pleadings (Docs. 99-105), moved for an evidentiary hearing, and filed a Motion for Leave to File a Second Amended Complaint (Doc. 95). By Court order, Defendant's deadline to respond to Plaintiff's

Motion for Leave to File a Second Complaint has been extended pending a ruling by the Court on Defendant's Motion for Judgment on the Pleadings. Doc. 98.

## II.     THE PLRA'S EXHAUSTION REQUIREMENT

The Eleventh Circuit dictates that before this Court may address Plaintiff's claims on the merits, it must determine the "threshold matter" as to whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits") *Chandler v. Crosby,* 379 F.3d 1278, 1286 (11th Cir. 2004) (calling the question of exhaustion under the PLRA a "threshold matter"). Plaintiff argues that his case is not entitled to dismissal on the issue of exhaustion for three reasons: (1) administrative remedies were not "available" to Plaintiff; (2) Plaintiff was not required to exhaust his administrative remedies because his current claims do not address "prison conditions" within the meaning of the PLRA; and (3) Powell failed to raise the issue of exhaustion earlier in the case, and has thus waived the defense pursuant to Federal Rule of Civil Procedure 12(g)(2). See Doc. 99, pp. 5-22. Plaintiff's arguments lack merit, and Plaintiff's complaint must be dismissed for failure to exhaust.

### A.   <u>Plaintiff is not excused from failing to exhaust his available administrative remedies.</u>

Following Plaintiff's return from Spalding County Hospital, Plaintiff attempted to give two grievances to Ms. Medlock in March of 2012. Doc. 102, p. 23, 24-25.[1] One grievance addressed an attack during the riot by another inmate, and the other grievance addressed Defendant

---

[1] As explained later, this Recommendation only considers Plaintiff's version of the facts pursuant to *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). It is worth noting, however, that some facts are in dispute: Ms. Medlock testified in her deposition that she does not remember receiving a grievance regarding Plaintiff's hospitalization, nor does she remember giving a grievance back to him, and Defendant Powell asserts that Ms. Medlock was not on Plaintiff's hall on March 6, 2012, when Plaintiff states that he filed his grievance. See Dep. Of Lesley Medlock, Doc. 104, p. 65, 13-23; Decl. of June Bishop, Doc. 106-1, p. 3.

Powell's alleged deliberate indifference while at Spalding County Hospital. *Id*. Ms. Medlock incorrectly told Plaintiff that the substance of the grievance against Powell was non-grievable because it dealt with care at Spalding County Hospital, which was "not in the control of the DOC." Doc. 102, p. 24, 1-11. In fact, the grievance procedure allowed "any condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections" to be grieved. See Dep. Of Gary Caldwell, Exh. A: SOP IIB05-0001, Doc. 103, p. 99. After Ms. Medlock told Plaintiff the issue was not grievable, Plaintiff threw the grievance away because Plaintiff had "no reason to believe she was lying." Doc. 102, p. 25, 10-21. Plaintiff argues that the above-stated actions by Ms. Medlock, as well as his fear of GDCP officials, made the grievance procedure "unavailable" to him, and that the exhaustion requirement should be excused.

Because the Eleventh Circuit has recognized that administrative remedies are still available to an inmate even when an official incorrectly precludes an inmate from filing a grievance, and because Plaintiff's fear of GDCP officials did not make the grievance procedure "unavailable" to him, Plaintiff's complaint must be **DISMISSED** at step-one of the *Turner* analysis.

In *Turner v. Burnside*, the Eleventh Circuit established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d 1077, 1082 (11th Cir. 2008). First, district courts look to the factual allegations in the motion and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id*. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id*. at 1082–83; see also *id*. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust). Because the Plaintiff's facts, taken as true, show that Brooks failed to exhaust his

administrative remedies, Plaintiff's complaint must be dismissed.

Available Administrative Remedies

According to both Plaintiff and Defendant, during the relevant period, the Georgia Department of Corrections' Standard Operating Procedure set forth a three-step grievance process, consisting of: (1) the filing of an informal grievance; (2) the filing of a formal grievance; and (3) the filing of an appeal. Dep. Of Gary Caldwell, Exh. A: SOP IIB05-0001, Doc. 103, pp. 97-108. The procedure further defined a grievable issue as "any condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections." *Id.*, Doc. 103, p. 99.

Failure to Exhaust: Plaintiff's Version of the Facts

Following the procedure set out in *Turner*, Plaintiff's complaint is due to dismissal at step-one. Plaintiff argues in his response to Defendant's Motion that the GDOC administrative remedies were unavailable to him following his return to the hospital for two basic reasons: (a) Plaintiff was not required to try to re-file a grievance after it was initially returned to him; and (b) Plaintiff was excused from having to exhaust his administrative remedies because his fear of retaliation from GDCP made the remedy unavailable.[2]

a. *Whether Plaintiff was required to refile the grievance.*

Plaintiff's complaint should be dismissed for failure to exhaust because the Eleventh Circuit has specifically held that a Plaintiff should attempt to refile a grievance after he has been precluded from filing a grievance by prison officials. See *Bryant,* 530 F.3d at 1371-72. The facts of the instant case are almost identical to the facts presented in *Bryant* by Appellant Andrew Priester.

---

[2] In support of these reasons, Plaintiff submits four separate depositions related to the exhaustion of Plaintiff's administrative remedies; exhibits containing GDOC Standard Operating Procedures, Grievance Forms, and Internal Grievance Procedures; as well as a personal journal kept by Plaintiff while in prison and Plaintiff's originally filed grievance regarding the violence during the riot.

Priester was an inmate at Rogers State Prison who was later transferred to Georgia State Prison. *Id.*

The Eleventh Circuit summarized the underlying facts of the case in Plaintiff's appeal:

> In January 2004, Priester received a transfer from Rogers to Georgia State Prison ("GSP"). During a visit to the GSP infirmary, Priester reported his abuse at Rogers to a psychiatrist and a counselor. He also requested a form to file a grievance about the abuse. The psychiatrist and the counselor responded that his mental health problems had caused him to be delusional; and, as a result, they refused to give him a grievance form to report the beatings. Nothing suggests that Priester made some further attempt to file a grievance about the abuse. He later obtained and submitted a grievance form at GSP for an unrelated incident about lost property.

*Bryant*, 530 F.3d at 1371-72. Just as in Plaintiff's case, Priester was precluded from filing a grievance regarding his alleged physical abuse, even though the beatings were a grievable issue. Similarly, according to Plaintiff's deposition, Plaintiff was precluded from filing a grievance about his treatment at the hospital, even though it was clearly a grievable issue.[3]

The Court in *Bryant* further held that the above stated facts supported a finding of available administrative remedies because Plaintiff had "access" and the ability to file a grievance. See *Bryant*, 530 F.3d at 1378-79. The *Bryant* opinion placed some weight on the fact that Plaintiff failed to file an additional grievance by noting that "[Plaintiff] could have exhausted his administrative remedies by filing a grievance at GSP and then by showing good cause for its tardiness. But, he filed no grievance about the abuse." *Id.* at 1373 ("We recognize that a grievance filed after Priester's transfer to GSP would have been untimely. But the relevant grievance procedures provide inmates with the opportunity to request consideration of untimely grievances for good cause").

The Eleventh Circuit recognized in *Bryant* "that other courts of appeals have concluded that administrative remedies are unavailable where prison officials do not respond to an inmate's grievances or prevent the filing of grievances." *Tilus v. Kelly*, 510 F. App'x 864, 866 (11th Cir.

---

[3] As an aside, Brooks, like Priester, was also able to later file a grievance form at GDCP for an unrelated incident about lost property.

2013) (citing *Bryant,* 530 F.3d at 1373 n. 6). The Eleventh Circuit specifically rejected that notion, however, by holding that Priester had "grievance procedures available to him" at Georgia State Prison despite the withholding of grievance forms by his counselor and a member of the medical staff. *Bryant,* 530 F.3d at 1373. In *Bryant,* the Eleventh Circuit further "assum[ed]—without deciding—that no grievance procedures were available to Priester" when officials deterred him from filing grievances through the threat of violence. *Id.* That issue was decided three months later in the *Turner* opinion.

In *Turner,* the Plaintiff filed both an informal grievance as well as a formal grievance in accordance with the applicable grievance procedure. The Plaintiff in *Turner* argued that he was excused from the defense of exhaustion because administrative remedies were not available to him after his formal grievance was torn up in front of him by the warden while stating that he "better not hear of another grievance or lawsuit pertaining to [Turner] getting shocked." *Id.* at 1081 (alteration in original). Following this warning, the Plaintiff in *Turner* did not pursue further administrative remedies by either appealing the torn up grievance or filing an additional grievance. Plaintiff argues that *Turner* is applicable in the instant case and that Plaintiff's administrative remedies were similarly unavailable.

*Turner* can be distinguished from the instant case. As Plaintiff notes, the *Turner* Court rejected "the defendants' arguments that Turner was required to file an additional grievance or to seek leave to file an out-of-time grievance." *Turner,* 541 F.3d at 1083. Yet it is clear that Plaintiff never *properly filed* either a formal or informal grievance about Defendant Powell's actions at Spalding County Hospital in the month of March, or any other time, unlike the Plaintiff in *Turner.* A decision finding administrative remedies available by this Court would not require Plaintiff to file an *additional* grievance. In fact, Plaintiff himself states that he "tried to file" a grievance

addressing his hospitalization; he never alleges that he properly filed a grievance that was later wrongfully rejected or torn-up, as was the case in *Turner*. Instead, Plaintiff was precluded from filing his grievance, just like the inmate in *Bryant*. Therefore, Plaintiff would not be filing an additional grievance, but would be making a "further attempt to file a grievance about the abuse" as encouraged in *Bryant*. See also *Schlicher v. Florida Dep't of Corr.*, 399 F. App'x 538, 539 (11th Cir. 2010) ("When a prisoner alleges that he did not have timely access to the required grievance forms, he still fails to exhaust his administrative remedies if he does not request consideration of an untimely grievance.") (per curiam).

While *Turner* does not require an inmate to "seek leave to file an out-of-time grievance … to the same official who destroyed the grievance when it was properly filed as a matter of right," the *Bryant* panel held that an inmate could have exhausted by filing the grievance at a later time, and "then showing good cause for its tardiness." Compare *Turner*, 541 F.3d at 1083 to *Bryant*, 530 F. 3d 1373.[4] It is evident from Plaintiff's version of the facts that Plaintiff filed no less than nine grievances in 2012, yet at no other time did Plaintiff attempt to file his grievance related to the hospital visit again. Pl.'s Depo, Exh. 5. Doc. 102, p. 71. Further, deposition evidence, as well as Plaintiff's own journal, shows that Plaintiff could have filed the grievance with a person other than Ms. Medlock. Indeed, Plaintiff gave "notes" to Powell, Humphrey, Dr. Batkins, and Bishop after his return from Spalding Hospital. Doc. 102, p. 70. The record also indicates that Plaintiff was transferred to Augusta State Medical Prison on June 1, 2012, (Doc. 106-2, p. 2) and could have filed an out-of-time grievance there with an entirely different staff, away from the officials who precluded him from filing his original grievance, but he failed to do so.[5] Further, Medlock's

---

[4] Both *Turner* and *Bryant* analyzed the same three-step grievance procedure applicable in the instant case.
[5] Plaintiff appears to challenge the ability to file an out-of-time informal grievance in the Deposition of Darrell Reid, noting that the informal grievance procedure and form do not provide for the untimely filing of an informal grievance for good cause, unlike the untimely filing of a formal grievance. Dep. Of Darrell Reid, Doc. 105, p. 28 – 31. Yet the

misinformation to Plaintiff regarding the grievability of his claim against Powell would also constitute good cause for tardiness, and had Plaintiff filed an out-of-time grievance with good cause, this Court would have the ability to review his claim because it would have been properly exhausted. See *Bryant*, 530 F.3d at 1373 (11th Cir. 2008) (citing *Harper v. Jenkin,* 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."); and *Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir. 2005) ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."). Moreover, such a procedure is contemplated by the relevant SOP by "providing inmates with the opportunity to request consideration of untimely grievances for good cause." *Bryant*, 530 F.3d at 1373; Dep. Of Gary Caldwell, Exh. A: SOP IIB05-0001, Doc. 103, p. 102.

According to the precedent set out in *Bryant*, by failing to file an out-of-time grievance or to refile his grievance with another counselor, Plaintiff failed to exhaust his available administrative remedies, and dismiss his complaint.

b. *Whether Plaintiff is excused from filing a grievance for fear of retaliation.*

Plaintiff also argues that he should be excused from being required to have pursued the issue further because he was in fear for his life. It is apparent that both *Turner* and *Bryant* excuse exhaustion in the presence of threats of violence or fear of filing a grievance. *Turner* enumerated the conditions courts should use to determine whether threats of substantial retaliation against an inmate made the administrative remedy "unavailable, … thus lift[ing] the exhaustion requirement as to the affected parts of the process." See *Turner*, 541 F. 3d at 1085. Plaintiff must show that: (1)

---

SOP makes clear that an informal grievance may be rejected for timeliness, and that such a rejection can be raised as the subject of a formal grievance, which can be considered "for good cause." See. Doc. 103, pp. 100; 103. This procedure was contemplated by the Court in *Bryant* when it found that the Plaintiff could have later filed an out-of-time grievance for good cause when a Plaintiff is precluded from filing an informal grievance. See *Bryant*, 530 F.3d at 1373.

the threat actually did deter him from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust. See *id.* Plaintiff's own version of the facts is somewhat inconsistent, but by any reading does not meet the conditions of unavailability.

Plaintiff unequivocally states in his affidavit: "I have been and remain in genuine fear of GDCP officials. If a GDCP official tells me something is the case – for example, that I cannot file a grievance about my hospitalization – I feel that I have to follow whatever the GDCP official tells me or else face retaliation or punishment." Pl.'s Aff. ¶ 48. Doc. 99-1, pp.9-10. Plaintiff further affirms that the "evidence confirms that [Plaintiff]'s fear of retaliation is reasonable and objective." Doc. 99, p. 18, n. 2. Yet the evidence presented by Plaintiff does no such thing. While Plaintiff uses the term "officials" very broadly, a review of Plaintiff's evidence regarding the only "officials" mentioned—Bishop, Medlock, McMillan, and Humphrey—reveals no threats made by any of them. What's more, the evidence presented by Plaintiff directly contradicts the presence of threats. In his deposition, Plaintiff testified that Ms. Medlock "came across to me as the type of – she's very nice." Pl.'s Depo, Doc. 102, p. 24, 14-15.

In view of the entire record, the only identifiable "official" who might conceivably made threats to Plaintiff is Defendant Powell. Plaintiff states in his affidavit that he is "particularly concerned about retaliation and punishment from Powell." Pl.'s Aff. ¶ 49. Doc. 99-1, p. 10. Though providing no specific evidence of threats from Powell, Plaintiff does paint a picture of his relationship with Powell that would suggest a reasonable fear. Plaintiff affirms that on "Mon 2-13 [he] gave [a] note to Bishop, McMillan, Powell & Humphrey about Watson's threats." Pl.'s Aff. ¶ 7. Doc. 99-1, p. 3; Pl.'s Journal, Doc. 99-1, p. 13. Plaintiff does not indicate that he received a

11

response to his note from those individuals, but on "Mon 2-27 [he] gave [an additional] note to Powell about Watson's threats (he only laughed) SOB." Doc. 99-1, p. 3; Pl.'s Journal, Doc. 99-1, p. 13. Plaintiff also recalls the alleged treatment he suffered at Spalding County Regional Hospital, specifically mentioning Defendant Powell's laughter at his unsanitary condition. Pl.'s Aff. ¶¶ 17-18. Doc. 99-1, pp. 4-5. Upon consideration of this and other facts presented by Plaintiff, his fear of Powell after returning from the hospital could be objectively reasonable. And while Plaintiff never actually enumerates a threat from Powell, the totality of the circumstances would suggest that Plaintiff meets the second condition of the two-part retaliation analysis set out in *Turner*.

But Plaintiff cannot show that the threat actually deterred him from lodging a grievance or pursuing a particular part of the process. In the journal penned by his own hand, Plaintiff noted Defendant Powell's receipt of a "note" on March 12, after his return from the hospital, during inspection, "about Watson's threats every day." Plaintiff makes certain to alert the Court that he wrote these facts "down in my journal, long before I filed any complaint in this action." See Doc. 109, p. 7; Pl.'s Decl. ¶ 18. The Court is again challenged to reconcile Plaintiff's "genuine fear" and feeling that he has "to follow whatever the GDCP official tells [him] or else face retaliation or punishment," with the fact that Plaintiff had specifically complained to Powell on at least one previous occasion about Watson and that Powell had responded with laughter. Whatever threat Powell presented to Plaintiff, it was not enough to deter Plaintiff from complaining to Powell himself, or to any of the other officials Plaintiff feared, and did not in fact deter him from filing later grievances. See also *Gould v. Owens*, 383 F. App'x 863, 869-70 (11th Cir. 2010) (upholding this District's findings of available administrative remedies after be denied formal grievance forms: "[t]he record shows [Plaintiff]'s use of the grievance procedures in other contexts, and we cannot say that the court's findings on this point were clearly erroneous.")).

In the context of step one of the *Turner* analysis, and taking Plaintiff's version of the facts as true, the facts show that while Brooks "has been and remain[s]" in genuine fear of GDCP officials, Brooks was still willing and able to voice and file grievances to Ms. Medlock, write notes to other prison officials, and file additional grievances. His actions show that he was not intimidated by whatever Defendant Powell told or indicated to him through laughter and apparent disregard. Plaintiff has failed to show that an administrative remedy was "unavailable" and cannot be excused for failing to take additional steps to file his grievance after Ms. Medlock allegedly precluded him from filing it.

**B.  Plaintiff's Eighth Amendment claim addresses "Prison Conditions" as defined by the PLRA.**

As an alternative argument, Plaintiff's second challenge to Defendant's Motion redefines the PLRA's exhaustion requirement with regard to the term "prison conditions," as applied in the Eleventh Circuit. Plaintiff contends that Congress did not intend for the PLRA to apply to constitutional violations that did not occur *in prison*, and thus the alleged constitutional violations suffered by Plaintiff at Spalding County Hospital are not subject to the exhaustion requirement of the PLRA.

The exhaustion requirement of the PLRA provides:

> No action shall be brought with respect to *prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined *in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis added). The Supreme Court makes clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532, (2002). At issue in the present case is what specific situations fall under the broad term of "prison conditions." Congress did not provide a definition for "prison conditions" in Section

1997e, so determining the meaning and applicability of the term "prison conditions" has fallen to the courts. The Eleventh Circuit, like other courts, has looked to the definition of similar phrases elsewhere in the PLRA, such as the definition in 18 U.S.C. § 3626(g). For example, in *Higginbottom v. Carter*, 223 F.3d 1259, 1260 (11th Cir. 2000), an inmate challenged the PLRA's exhaustion requirements as to his excessive force claims, arguing that instances of excessive force were not "prison conditions." *Id.* The court looked to:

> Title 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, [and] provides that the term "civil action with respect to prison conditions" means any civil action arising under federal law "with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison."

*Higginbottom*, 223 F.3d at 1260. The Court determined that excessive force claims were subject to exhaustion, and that this result was mandated by the "plain language" of the statute. See *id*.

Although Plaintiff cites *Higgenbottom*, Plaintiff places much greater emphasis on an opinion from the Seventh Circuit Court of Appeals to explain and support his position:

> With regard to the precise interpretive task before us, the *obvious limit* to the *plain wording* of the term 'prison conditions' is that only complaints relating to conditions *within a prison* or correctional facility are subject to the exhaustion requirements. Conditions unrelated to that situation cannot be said to be about prison conditions: Only complaints about the "conditions of confinement," 18 U.S.C. § 3626, *in* "any jail, prison, or other correctional facility," 42 U.S.C. § 1997e(a), can be characterized properly as involving "prison conditions."

*Witzke v. Femal*, 376 F.3d 744, 752 (7th Cir. 2004) (emphasis added in Plaintiff's brief); see also Doc. 99, p. 12. Plaintiff contends that this analysis supports a finding that exhaustion applies only to conditions "within the walls of the prison," and cites additional cases from District Courts in New York and Illinois where the courts found exhaustion inapplicable to occurrences happening outside the prison. See Doc. 99, pp. 11-12; *Borges v. Adm'r for Strong Mem. Hosp.*, No. 99-CV-6351, 2002 U.S. Dist. Lexis 18596, (W.D.N.Y. Sept. 30, 2002); *Vasquez v. Williams*, No. 13-CV-9127, 2015 U.S. Dist. Lexis 105913 (S.D.N.Y. Aug. 11, 2015); *Bolden v. Stronger*, No.

03-CV-5617, 2005 U.S. Dist. Lexis 7473 (N.D.Ill. Feb. 1, 2005).

*Witzke* does not stand for the proposition that incidents occurring outside a "prison" are not subject to exhaustion. Instead, the Seventh Circuit determined that a probationer's time "outside a jail or prison," in both a halfway house and a rehab facility, were conditions within "a correctional facility" that were subject to exhaustion under the PLRA. See e.g. *Witzke*, 376 F.3d 744. The Seventh Circuit considered a variety of factors to determine whether a facility was "correctional" including: (1) the Plaintiff's freedom to come and go; (2) his sleeping and living arrangements; as well as (3) whether the Plaintiff received credit for his time at those facilities. See *id.* at 752. Application of the Seventh Circuit's factors would support a finding that Brooks was required to grieve the issues occurring during his time at Spalding County Hospital.

Looking to the question of freedom to come and go, Plaintiff was considerably less free than the plaintiff in *Witzke*. In that case, the plaintiff was assigned to a halfway house and rehab facility, where he was required to stay at night, but free to leave the premises of the facilities during the day. See *id.* at 752. In the present case, Plaintiff was chained to a hospital bed under constant supervision by correctional officers, enjoying much less freedom than Mr. Witzke. See Pl.'s Aff. ¶¶ 17-18, Doc. 99-1, p. 4-5. This confinement and lack of freedom would support the argument that Plaintiff's time at Spalding County Hospital was in fact a prison condition.

The living and sleeping accommodations also show that Plaintiff remained in the custody of a "correctional facility" during his stay at the hospital. The plaintiff in *Witzke* was confined with another "inmate" while at the halfway house, an arrangement similar to that of a jail or prison. In this case, while Brooks did not share a room with another inmate during his time at Spalding County Hospital, he shared a room with a staple of prison life: prison guards. As in *Witzke*, Brooks' time at Spalding County Hospital counted towards his time incarcerated.

The Seventh Circuit also cautioned against the very reasoning Plaintiff presents when the opinion later states that "[r]estricting the PLRA's application to persons confined *in jail or prison* would render the term 'other correctional facility' superfluous." *Witzke*, 376 F.3d at 753. It further recognized that applying the PLRA's exhaustion requirement to Mr. Witzke's claims at both the halfway house and rehab facility "gives effect to the manifest intent of the PLRA," holding:

> The PLRA was enacted not only to limit frivolous suits but also to permit the correctional facilities to address the problem before responding to litigation. *See Porter*, 534 U.S. at 525, 122 S.Ct. 983 ("Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). Congress' choice of broad language makes clear that it intended that a wide variety of institutions be afforded the opportunity to address the problems presented in inmate complaints before the initiation of a federal lawsuit.

See *id*. at 753. It is undisputed by both parties that Plaintiff's complaints against Defendant Powell originating from Spalding County Hospital were grievable, and thus the Georgia Department of Corrections should have been given time and opportunity to address Plaintiff's grievances before a federal suit was initiated.

Moreover, while opinions from the District Courts of New York and Illinois have some persuasive authority,[6] Plaintiff has cited to no Eleventh Circuit opinions recognizing that alleged

---

[6] Plaintiff's cited authority can also be distinguished from the instant case.

In *Borges v. Adm'r for Strong Mem. Hosp.*, No. 99-CV-6351, 2002 U.S. Dist. Lexis 18596, (W.D.N.Y. Sept. 30, 2002), the District Court found that the Plaintiff was not excused from exhaustion requirement because he was "outside the prison walls," but rather, administrative remedies were not available to him because actions taken by an "outside agency" were non-grievable issues under the relevant Department of Corrections Standard Operating Procedure. See *id*. Brooks states that the incident at Spalding County Hospital is grievable under the GDOC SOP.

In *Vasquez v. Williams*, No. 13-CV-9127, 2015 U.S. Dist. Lexis 105913 (S.D.N.Y. Aug. 11, 2015), the District Court also found that the Plaintiff was not excused from exhaustion requirement because he was "outside the prison walls," but rather, administrative remedies were not available to him because the relevant Department of Corrections Standard Operating Procedure did not provide for a grievance procedure "for activities that take place outside the ordinary place of confinement." See *id*. Brooks states that the incident at Spalding County Hospital is grievable under the GDOC SOP.

In *Bolden v. Stronger*, No. 03-CV-5617, 2005 U.S. Dist. Lexis 7473 (N.D.Ill. Feb. 1, 2005), the District Court found that a lack of treatment of detainees after their release from a jail is not a prison condition and is not subject to exhaustion. In the instant case, Brooks presents no evidence that he was released from the custody of the GDOC while at Spalding County Hospital. Further, *Bolden*'s "suggestion" of conditions at outside hospitals not constituting prison

violations occurring "outside the prison walls" are not subject to the exhaustion requirement of the PLRA.

A number of Eleventh Circuit published and unpublished opinions support the opposite conclusion. For example, in *Singleton v. Dep't of Corr.*, 277 F. App'x 921 (11th Cir. 2008) (per curiam), the Court of Appeals remanded a case back to the Southern District of Georgia for additional findings on whether an inmate had exhausted his administrative remedies as to claims relating to a bus fire while en route to Georgia State Prison. In that case, Plaintiff made the following allegations, as summarized by the Magistrate Judge:

> Officer Haynes and Sergeant Johnson of the Georgia State Prison were transporting plaintiff, along with other inmates, to the Georgia State Prison in Reidsville, Georgia, when the vehicle in which they were traveling caught fire. The inmates had informed Sgt. Johnson that they smelled burning rubber, but Sgt. Johnson continued to drive the vehicle for another ten miles, not stopping until the vehicle was engulfed in flames. Once he stopped the vehicle, Sgt. Johnson refused to let the inmates out of the locked cage in the back of the vehicle, causing plaintiff to inhale smoke for several minutes. When Officer Haynes opened the cage to allow the inmates to exit the vehicle, the other inmates pushed plaintiff to the floor as he endeavored to retrieve his "legal documents" and trampled him as they exited the vehicle. Plaintiff asserts that the smoke he inhaled while trapped in the vehicle caused his lungs, throat, and chest to burn and that he suffered a back injury when the other inmates walked over him.

Magistrate Judge's Report and Recommendation at 2-3, *Singleton v. Johnson*, No: 4:06-cv-75, (S.D. Ga. June 29, 2006), ECF No. 15. The District Court dismissed Plaintiff's case because he failed to exhaust his administrative remedies. *Singleton v. Johnson*, (No. 4:06-cv-75), 2007 WL 2331308, at *1 (S.D. Ga. Aug. 13, 2007) rev'd sub nom. *Singleton v. Dep't of Corr.*, 277 F. App'x 921 (11th Cir. 2008). On appeal, the Eleventh Circuit determined that Plaintiff's claims were subject to exhaustion, but that the District Court needed to determine whether the Plaintiff had raised a genuine issue of material fact as to whether his grievance appeal was timely raised.

---

conditions is actually a citation to *Borges*, discussed and distinguished above.

*Singleton*, 277 F. App'x at 923. By implication, the Court of Appeals required the alleged constitutional violations occurring outside the prison, but still concerning the "effects of actions by government officials on the lives of persons confined in prison," to be exhausted. See *Higginbottom*, 223 F.3d at 1260. The case was later dismissed for failure to exhaust. *Singleton*, No: 4:06-cv-75, (S.D. Ga. Aug. 18, 2008). The dismissal for exhaustion was affirmed in a separate appeal. See *Singleton v. Department of Corrections*, No: 08-14971 (11th Cir. Jul. 6, 2009) (per curiam).

In *Simpson v. Holder*, 200 F. App'x 836, 837 (11th Cir. 2006), the Eleventh Circuit upheld a district court's dismissal of a federal inmate's Eighth Amendment claims for inadequate medical treatment he received while in offsite private medical facilities for failure to exhaust. *Id.* See also *Simpson v. Coleman*, No. 5:04-CV-543, 2005 WL 2787010, at *4 (M.D. Fla. Oct. 26, 2005) aff'd sub nom. *Simpson v. Holder*, 200 F. App'x 836 (11th Cir. 2006). In *Simpson*, Plaintiff brought claims against both prison officials and private medical staff for deliberate indifference and medical negligence for care he received after a flag football injury. See *id.* at *1. The injury led to the eventual amputation of his leg. *Id.* Plaintiff brought suit against the current and former wardens at the Coleman medium-security facility, individual prison medical personnel, the prison recreation specialist, unidentified physicians who examined and treated Plaintiff, and several outside doctors. *Id.* To the extent that these claims were construed as claims for negligent medical care at the hands of non-government employees, Plaintiff's claims fell under the Federal Tort Claims Act, which required proper exhaustion. *Id.* at *4; see 28 U.S.C. § 2675. The district court made clear, however, that Plaintiff also failed to exhaust his claims against prison officials "concerning … medical treatment following his injury" provided at Leesburg Regional Medical Center in Leesburg, Florida as well as the Federal Medical Center and St. Mary's Hospital in

Rochester, Minnesota. *Id.* at *1. The Eleventh Circuit affirmed the district court's decision and determined that all of Plaintiff's claims were subject to dismissal for failure to exhaust.

The Eleventh Circuit's decision in *Napier v. Preslicka*, 314 F. 3d 528 (11th Cir. 2002) further supports the proposition that conditions suffered "outside prison walls" are subject to the PLRA. See Docs. 106, p. 4-5; Doc. 109, p. 5. *Napier* involved the interpretation of 42 U.S.C. § 1997e(e), rather than Section 1997e(a). Section 1997e(a) requires exhaustion of administrative remedies for actions "brought with respect to prison conditions," whereas Section 1997e(e) limits remedies for "mental or emotional injury suffered while in custody". The Eleventh Circuit has previously looked to the provisions in 1997e(a) to interpret 1997e(e) when discussing the meaning of the same word, such as the word "confined." See *Harris v. Garner*, 216 F.3d 970, 974-79 (11th Cir. 2000). The Court can similarly consider the Eleventh Circuit's interpretations as indicative of Congress' intent when drafting the PLRA, as well as the applicability of 1997e(a) to claims occurring while confined in a jail, prison, or other correctional facility.

Moreover, it is not reasonable to believe Congress would have wanted the applicability of section 1997e(a), or the definition of "confinement" to change every time an inmate goes "outside the prison walls."[7] Such an interpretation would lift the exhaustion requirement for constitutional violations by prison officials occurring during every inmate transfer, work detail, appearance in

---

[7] Construing the PLRA as Plaintiff requests creates a hypothetical analogous to one Judge Carnes presented when determining Congress' intent regarding the confinement status of a prisoner for the PLRA at the time of filing:

> In considering why Congress chose to peg the application of section 1997e(e) on confinement status at the time of filing, it is worth mentioning that confinement status can change several times during the course of the months or years it takes the overburdened district courts to enter judgment in a case. Consider this hypothetical and how episodic the application of section 1997e(e) would be if post-filing confinement status were the criterion: A plaintiff is confined when he files the lawsuit (the section applies); shortly thereafter he is released on parole (the section no longer applies); later he is picked up and jailed on a parole violation charge (the section applies again); he bails out after a few days (the section no longer applies); but after a hearing his parole is revoked, and he is returned to prison (the section applies again). No one has yet explained to us why Congress would have wanted the application of an important provision, such as section 1997e(e), to be such an on-again, off-again thing.

*Harris v. Garner*, 216 F.3d 970, 978-79 (11th Cir. 2000).

court, and off-site medical visit. Plaintiff's argument stands in contradiction to Congress' intent in enacting the PLRA as well as both the Seventh and Eleventh Circuit's opinions on the issue. Therefore, Brooks' claim against Defendant Powell is subject to the PLRA exhaustion requirement.

## C. **Defendant Powell is not precluded from raising exhaustion under the Federal Rules of Civil Procedure.**

Plaintiff's final challenge to Defendant Powell's Motion for Judgment on the Pleadings is that Powell is barred by Federal Rule of Civil Procedure 12 from raising the defense of exhaustion because he did not raise it in his first Rule 12 motion filed in 2012. Defendant Powell has not waived his exhaustion defense in the initial proceedings of this case. The Eleventh Circuit has previously addressed and affirmed dismissals for failure to exhaust that were first raised on motion for summary judgment. See *Bryant*, 530 F. 3d at 1375. The weight of Eleventh Circuit authority requires that the Court address the "threshold issue" of exhaustion as a "precondition to an adjudication on the merits," and the Court cannot deny Defendant's exhaustion defense as waived in this case, but must consider the matter.

Rule 12 lists the available responsive motions to a Defendant after service of process. The rule requires that the Defendant should raise all defenses and objections available in either an answer or a motion. See *id.* at 12(a) and (b). Rule 12(b) also lists seven enumerated defenses which may be raised in Defendant's first Rule 12 motion and provides that the following defenses are waived if they are not raised in the first responsive pleading: (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; and (5) insufficient service of process. 12(h)(1). As a further limitation, Rule 12(g)(2) requires that a party consolidate certain dismissal arguments into a single motion, with some exceptions. See *id.* The two exceptions at issue in the instant

case—contained in Rule 12(h)—provide that a party need not consolidate all failure-to-state-a-claim arguments, or challenges to subject matter jurisdiction, in a single dismissal motion. See Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted ... may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Courts have struggled with the question of when exhaustion must be addressed in prisoner cases pursuant to the Federal Rules, focusing on whether exhaustion is a matter in abatement (governed by Rule 12(b)) or an affirmative defense (governed by Rules 9 and 12). The Eleventh Circuit has reviewed the dismissal of an inmate's case for failure to exhaust administrative remedies under the PLRA as *both* a matter in abatement—i.e., a procedural defect to resolve at the pleadings stage—and as an issue for summary judgment. Compare *Bryant*, 530 F.3d at 1376 ("Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.") (footnotes omitted) with *id*. at 1381 (Wilson, J., concurring in part and dissenting in part) ("This Court, on the other hand, has consistently treated exhaustion in other contexts on summary judgment . . . . I see no reason to treat exhaustion under each statute differently."); *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 n.3 (11th Cir. 2008) (per curiam) ("Once 'matters outside the pleadings are presented,' a motion for dismissal pursuant to 12(b)(6) is no longer appropriate, and 'the motion must be treated as one for summary judgment under Rule 56.'") (quoting Fed. R. Civ. P. 12(d)).

Plaintiff echoes the former interpretation that exhaustion "is unlike a defense under Rule

12(b)(6) for failure to state a claim, which is generally decided on the merits." *Bryant*, 530 F.3d at 1377, n. 12 (citing *NAACP v. Hunt,* 891 F.2d 1555, 1560 (11th Cir. 1990)). Instead, exhaustion under the PLRA is an unlisted Rule 12(b) matter in abatement, similar to questions of jurisdiction. See *Turner*, 541 F.3d 1077, 1082 (11th Cir. 2008) ("This means that procedurally the defense is treated like a defense for lack of jurisdiction, although it is not a jurisdictional matter.") (internal quotations omitted). From this authority, Plaintiff argues, it follows that since Defendant's first Rule 12 motion did not raise exhaustion as a possible defense, the defense is waived as it would be for personal jurisdiction, service of process, or venue.

The *Bryant* court likened exhaustion to subject matter jurisdiction under 12(b)(1), which is never waived and can be raised at any time. See *Bryant*, 530 F.3d at 1376 (11th Cir. 2008) (holding that "a judge may make factual findings" about exhaustion, much like he can "about subject matter jurisdiction."); Fed. R. Civ. P. 12(h)(3). In a more recent decision discussing exhaustion as to habeas matters, Judge Carnes noted that exhaustion was comparable to neither subject matter jurisdiction, which is related "only to prescriptions delineating the classes of cases," nor personal jurisdiction, which is related specifically to persons. See *Santiago-Lugo v. Warden*, 785 F. 3d 467, 472 (11th Cir. 2015). Exhaustion instead falls into a separate set of "claim-processing rules" which "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id*. Given the PLRA's exhaustion requirement and this Court's lack of power to review unexhausted claims, it follows that exhaustion applies to the "classes of cases" governed by the PLRA, not to the Plaintiff as a person, and should be likened to subject matter jurisdiction.[8]

---

[8] The Eleventh Circuit has never explicitly determined whether failure to exhaust under the PLRA divests the court of subject matter jurisdiction. See *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) ("we need not decide whether failure to exhaust under § 1997e(a) divests this Court of subject matter jurisdiction."). The Eleventh Circuit has, however, recognized that the issue of exhaustion either divests a court of subject matter jurisdiction or should be

However, the alternative theory—which appears to be more consistent with recent Eleventh Circuit opinions and the federal rules—characterizes exhaustion under the PLRA as an affirmative defense, raised in an answer, and addressed under Rule 12(b)(6) and then on summary judgment. For example, in a recent opinion from the Eleventh Circuit, a three-judge panel affirmed the United States District Court for the Southern District of Florida's dismissal of Section 1983 claims for failing to exhaust his administrative remedies. See *Trias v. Florida Dep't of Corr.*, 587 F. App'x 531, 536 (11th Cir. 2014) (per curiam). While this holding is not significant on its face, a review of the district court record reveals that Defendant Bernice Terrell filed a Motion to Dismiss Plaintiff's claims against her in her official capacity as barred by the Eleventh Amendment. Motion to Dismiss for Failure to State a Claim, *Trias. v. Florida Dep't of Corr.*, No. 1:11-cv-24003-UU (S.D. Fl. Jun. 24, 2012), ECF No. 21. Notably, Defendant Bernice Terrell did not raise exhaustion in her first Motion to Dismiss, but in her contemporaneously filed answer. See Answer at 7, *Trias. v. Florida Dep't of Corr.*, No. 1:11-cv-24003-UU (S.D. Fl. Jun. 24, 2012), ECF No. 22. Upon a later filed Motion for Summary Judgment, Defendant Terrell briefed exhaustion. Motion for Summary Judgment, *Trias. v. Florida Dep't of Corr.*, No. 1:11-cv-24003-UU (S.D. Fl. Nov. 8, 2012), ECF No. 43. The District Court treated the Motion for Summary Judgment as a Motion to Dismiss for failure to exhaust, and dismissed Plaintiff's claim.

---

treated as such procedurally in non-PLRA cases. See *Jory v. United States*, 562 F. App'x 926, 929 (11th Cir. 2014) *cert. denied*, 135 S. Ct. 1548 (2015) ("exhaustion of administrative remedies is a general prerequisite to judicial review of any administrative action."); *Chapman v. U.S. Postal Serv.*, 442 F. App'x 480, 485 (11th Cir. 2011) (failure to comply with FTCA exhaustion requirement divested the courts of subject matter jurisdiction); *Thompson v. U.S. Marine Corp.*, 398 F. App'x 532, 535 (11th Cir. 2010) ("[e]xhaustion of administrative remedies is not a jurisdictional requirement, but 'performs a function similar to the judicial doctrine of ripeness by postponing judicial review.'") (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1368, n. 3 (11th Cir. 1994));.*Karam v. U.S. Citizenship & Immigration Servs.*, 373 F. App'x 956, 957 (11th Cir. 2010) (failure to comply with statutory exhaustion requirements in naturalization proceedings divested the courts of subject matter jurisdiction); *Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006) (failure to exhaust administrative remedies divested the courts of subject matter jurisdiction in certain Title VII cases); *Damiano v. F.D.I.C.*, 104 F.3d 328, 333 (11th Cir. 1997) (failure to exhaust administrative remedies as provided in the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) divests the courts of subject matter jurisdiction).

*Trias. v. Florida Dep't of Corr.*, No. 1:11-cv-24003-UU (S.D. Fl. Aug. 9, 2013). Plaintiff appealed, and the Eleventh Circuit affirmed the District Court's dismissal. See *Trias v. Florida Dep't of Corr.*, 587 F. App'x 531, 536 (11th Cir. 2014) (per curiam). The Eleventh Circuit found no issue with the District Court's dismissal at the summary judgment stage, despite the Defendant's previous filing of a Motion to Dismiss for Failure to State a Claim, as long as the Court treated the Motion for Summary Judgment as a Motion to Dismiss. In that case, the Court of Appeals, quoting *Bryant*, recognized that when exhaustion is raised at the Motion for Summary Judgment stage, it is treated as a Motion to Dismiss. *Id*.

The Eleventh Circuit made similar findings in another opinion recognizing that exhaustion is an "affirmative defense." See *Donawa v. Gilmore*, 559 F. App'x 968 (11th Cir. 2014) ("PLRA's exhaustion requirement is an affirmative defense.")(citing *Jones v. Bock*, 549 U.S. 199, 216–17 (2007)(per curiam))); see also Fed. R. Civ. P. 9. In that opinion, the Eleventh Circuit determined that a District Court may *sua sponte* dismiss a complaint under Section 1915A for failure to exhaust when lack of exhaustion appears of the face of the complaint, similar to the district court's authority to dismiss a complaint for failure to state a claim. See *Donawa*, 559 F. App'x at 968-69 (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (discussing the district court's authority to dismiss a complaint *sua sponte* under Section 1915A for failure to state a claim).

If exhaustion is indeed an affirmative defense, as indicated by recent Eleventh Circuit authority, the Court could still address the issue by ruling on Defendant's Motion for Judgment on the Pleadings under 12(c); or construing the motion as either a Motion to Dismiss for Failure to State a Claim or as a Motion for Summary Judgment, and still ruling on the issue of exhaustion.[9] Therefore treating Defendant's exhaustion defense as either a matter of abatement or an

---

[9] In converting Defendant Powell's Motion into a 12(b)(6) Motion for failure to exhaust, Plaintiff asserts that Defendant Powell's motion is barred pursuant to Federal Rules of Civil Procedure 12(g)(2); however, there is no applicable precedent barring this Court from styling Defendant's Motion as one for Summary Judgment.

affirmative defense, both supported by Eleventh Circuit precedent, this Court can rule on the issue of exhaustion even if Defendant failed to raise it in his first Rule 12 Motion.

Most important however, the Court—because it considers matters outside the pleadings—is obligated to give Plaintiff "a reasonable opportunity to present all pertinent material." See Fed. R. Civ. P. 12(d) (stating that if a court considers matters outside the pleadings on certain Rule 12 motions, then "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"); see also *Bryant*, 530 F.3d at 1376 (recognizing that the district court must give the Plaintiff "sufficient opportunity to develop a record."). Such an opportunity has been provided to both parties in this case as exampled by this Court's order allowing discovery on issues related to exhaustion (Doc. 91); granting an extension related to that discovery (Doc. 94); and the presentation of well over five-hundred cumulative pages of evidence in support of the parties' briefs (Docs. 86-2; 99-1; 102; 103; 104; 105; 106-1; 106-2; 106-3; 109-1).

### III.    CONCLUSION

Because Plaintiff's complaint is entitled to dismissal at step one of *Turner*, this Court need not proceed to step two or make specific findings of fact. Accordingly it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED without PREJUDICE** for failure to exhaust and Defendant's Motion for Judgment on the Pleadings (Doc. 86) be **GRANTED**. It is further **RECOMMENDED** that Plaintiff's Motion for Evidentiary Hearing be **DENIED**.

Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 23rd day of March, 2016.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge