**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **FRED DALTON BROOKS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 5:12-CV-281 (CAR)** |
| | : | **Proceedings Under 42 U.S.C. § 1983** |
| **WILLIAM POWELL,** | : | |
| **Defendant.** | : | |
| | : | |

**ORDER ON UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a Section 1983 deliberate indifference to serious medical needs case currently before this Court on a Report and Recommendation after remand from the Eleventh Circuit Court of Appeals. On remand, Defendant filed a Motion for Judgment on the Pleadings, alleging that Plaintiff failed to exhaust administrative remedies. In the Report and Recommendation, the United States Magistrate Judge recommends granting Defendant's Motion and dismissing Plaintiff's Amended Complaint without prejudice. Plaintiff has filed an Objection to the Report and Recommendation, as well as a Motion for Leave to File a Second Amended Complaint.

The Court has considered Plaintiff's Objections *de novo*, thoroughly evaluated this record and the case law, and held an evidentiary hearing to determine the issues in this case. For the reasons that follow, the Report and Recommendation is hereby **ADOPTED**; Defendant's Motion for Judgment on the Pleadings [Doc. 86] is **GRANTED**

and Defendant is **DISMISSED**; and Plaintiff's Motion for Leave to File a Second Amended Complaint [Doc. 95] is **DENIED** as **FUTILE**.

## DISCUSSION

This case presents two main issues: (1) whether Plaintiff exhausted his administrative remedies, and (2) whether Defendant waived the failure to exhaust defense by failing to raise it in his first responsive pleading. The record before the Court shows Plaintiff did not exhaust available administrative remedies as to his claim against Defendant Powell. The Court further finds Defendant did not waive the exhaustion requirement by failing to raise it in his first responsive pleading.

### I. Background

This action arises from Plaintiff's three-day hospitalization after a prison riot occurred at the Georgia Diagnostic and Classification Prison (GDCP). On February 7, 2012, Plaintiff was placed in the Special Management Unit (SMU) at the GDCP. Plaintiff received several threats from a fellow inmate, Tremayne Watson. On February 29, Watson attacked Plaintiff during a prison riot. Consequently, prison officials took Plaintiff to the Spalding County Regional Hospital in Griffin, Georgia, where he was bound with leg-irons and waist-chains. During Plaintiff's hospitalization, he was injected with medication that caused diarrhea. According to Plaintiff, Deputy Warden William Powell ignored his pleas to lower the waist-chains, forcing Plaintiff to defecate in his jumpsuit and sit in his own excrement for a period of two days, all while

Defendant Powell and three other correctional officers laughed at and mocked him.

On July 16, 2012, Plaintiff filed a Complaint in this Court, which was referred to the Magistrate Judge. In his original Complaint, Plaintiff brought claims against several corrections officers for failure to protect him from the assault by inmate Watson, along with the present claim against Defendant Powell for deliberate indifference to serious medical needs. On September 5, 2013, this Court adopted the Magistrate Judge's Report and Recommendation and dismissed Plaintiff's Complaint. Plaintiff appealed this decision. On September 3, 2015, the Eleventh Circuit Court of Appeals affirmed the dismissal of Plaintiff's failure to protect claims, but reversed the finding that Defendant Powell was entitled to qualified immunity and remanded the case for further proceedings on Plaintiff's Eighth Amendment claim against Defendant Powell.

On remand, Defendant filed a Motion for Judgment on the Pleadings. On March 24, 2016, the Magistrate Judge submitted a Report and Recommendation to grant the motion. The Court subsequently granted Plaintiff's Motion for an Evidentiary Hearing as to the availability of Plaintiff's administrative remedies, and the parties presented evidence before the Magistrate Judge on September 21, 2016. The Court has read the complete transcript of this hearing.

## II. Availability of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust "such administrative remedies as are available" regarding prison conditions before filing a

lawsuit pursuant to 42 U.S.C. § 1983.[1] Thus, "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."[2] A court cannot waive the exhaustion requirement.[3] Exhaustion is "a precondition to an adjudication on the merits."[4]

Although the PLRA requires an inmate to exhaust administrative remedies, this requirement contains one "built-in exception," namely, "[a] prisoner need not exhaust remedies if they are not 'available.'"[5] As the Supreme Court has explained, this exception means an inmate need only exhaust those grievance procedures that are "'capable of use' to obtain 'some relief for the action complained of.'"[6] Accordingly, administrative remedies are not available where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[7]

In the Report and Recommendation, the Magistrate Judge determined Plaintiff failed to exhaust his available administrative remedies at the first step of the analysis set

---

[1] 42 U.S.C. § 1997e(a).

[2] *Bryant v. Rich*, 530 F.3d 1368, 1372-73 (11th Cir. 2008) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005)).

[3] *Id.* at 1373 (citing *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).

[4] *Id.* at 1374.

[5] *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016).

[6] *Id.* at 1858-59.

[7] *Id.* at 1860.

forth in *Turner v. Burnside*.[8] Plaintiff objects, arguing the Magistrate Judge improperly drew inferences against Plaintiff at the first step of *Turner*, where the Court must accept Plaintiff's version of the facts as true.

In *Turner*, the Eleventh Circuit established a two-step process for deciding a motion to dismiss based on an inmate's failure to exhaust.[9] At the first step, the district court considers the factual allegations in the defendant's motion to dismiss and the plaintiff's response.[10] If those allegations conflict, the court accepts the plaintiff's version of the facts as true.[11] If the plaintiff's facts show the plaintiff failed to exhaust administrative remedies, the court will dismiss the complaint.[12] If the court does not dismiss the complaint at the first step, the court moves to the second step where it is authorized "to make specific findings in order to resolve the disputed factual issues related to exhaustion" to determine whether the prisoner has exhausted his available remedies.[13] At this step, the court may "consider facts outside of the pleadings and [] resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."[14] The defendant bears the burden of proving the plaintiff failed to exhaust.[15]

---

[8] 541 F.3d 1077 (11th Cir. 2008).
[9] *Id*. at 1082-83.
[10] *Id.* at 1082.
[11] *Id.*
[12] *Id.* (citing *Bryant*, 530 F.3d at 1373-74).
[13] *Id.* at 1082-83.
[14] *Bryant*, 530 F.3d at 1376.
[15] *Turner*, 541 F.3d at 1082 (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007)).

Plaintiff acknowledges the Georgia Department of Corrections' (DOC) Standard Operating Procedure (SOP) in effect at the time had a three-step process for filing a grievance: (1) the filing of an informal grievance, (2) the filing of a formal grievance, and (3) the filing of an appeal.[16] Plaintiff argues he has exhausted his administrative remedies for three reasons: (1) Ms. Lesley Medlock's misinformation caused a breakdown in the grievance procedure and thereby rendered administrative remedies unavailable; (2) Plaintiff's fear of retaliation by Defendant Powell deterred him from filing a grievance about the Hospital incident; and (3) Plaintiff was not required to file an out-of-time grievance during his temporary stay at Augusta State Medical Prison.

According to Plaintiff, a few days after prison officials returned him to SMU, he attempted to file two informal grievances with his counselor, Ms. Lesley Medlock, on or around March 6, 2012.[17] While one grievance involved Watson's attack during the riot, the other addressed Plaintiff's treatment at the hands of Defendant Powell at Spalding County Hospital. Ms. Medlock accepted and processed Plaintiff's grievance regarding Watson's attack. However, Plaintiff alleges Ms. Medlock returned the other grievance to Plaintiff and erroneously told him the events at the Hospital were not grievable because Plaintiff was under the care of the Hospital, not the Georgia Department of

[16] See SOP IIB05-0001, [Doc. 103] at 97-108.

[17] Plaintiff was returned to SMU on March 2, 2012.

Corrections [DOC].[18] Plaintiff contends because he lacked familiarity with SMU's grievance procedures, he believed Ms. Medlock and threw away the grievance.

On June 1, 2012, Plaintiff was temporarily transferred to Augusta State Medical Prison, where he remained until June 14. During his approximately two weeks at Augusta State Medical, Plaintiff made no attempt to file a late grievance concerning his treatment by Powell at Spalding Hospital. However, Plaintiff alleges he never went through an orientation regarding the grievance procedures at Augusta State Medical and never interacted with the counselors. Additionally, Plaintiff contends he knew he would soon return to SMU and feared retaliation by Defendant Powell if he attempted to grieve the incident at Spalding Hospital.

Plaintiff's version of the facts, accepted as true, is sufficient to suggest administrative remedies were rendered unavailable. Accordingly, the Court moves to the second step of *Turner*. Because the second step of the *Turner* analysis requires the Court to resolve disputed issues of fact, an evidentiary hearing was scheduled. The evidence produced at this hearing refutes Plaintiff's version of the facts and shows the administrative process was available and Plaintiff failed to pursue the grievance procedure as to his claim against Defendant Powell.

---

[18] *See* SOP IIB05-0001, [Doc. 103] at 99 (noting an inmate can grieve "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in control of the Department of Corrections" other than certain enumerated exceptions).

## EVIDENTIARY HEARING

On September 21, 2016, the parties presented evidence before the Magistrate Judge as to the availability of Plaintiff's administrative remedies. The Magistrate Judge heard testimony from the following witnesses: Plaintiff; Ms. Lesley Medlock, a Grievance Counselor at SMU; Dr. Gary Caldwell, the Chief Counselor at SMU; June Bishop, a Deputy Warden at SMU; and Ms. Madie Kitchens, Chief Counselor and Grievance Coordinator at Augusta State Medical Prison. The Court has carefully read the transcript of the hearing and has assessed *de novo* the credibility of the witnesses.

The testimony of Lesley Medlock, Plaintiff's Grievance Counselor, was most significant. As counselor, Ms. Medlock was responsible for receiving informal grievances filed by inmates in the SMU.[19] When she received an informal grievance, she would initial and date it, then submit it to the Grievance Coordinator.[20] The Grievance Coordinator would then log the grievance into the "SCRIBE" system.[21] Ms. Medlock would also discuss the grievance with the inmate and staff members in an attempt to resolve the complaint.[22]

Ms. Medlock testified that after Plaintiff returned from the hospital she had multiple conversations with him regarding inmate Watson's assault during the riot. She recalled that Plaintiff filed a single grievance regarding the assault, which she

---

[19] [Doc. 126] at 72-73.
[20] *Id.* at 86.
[21] *Id.* at 73-74.
[22] *Id.* at 75-76.

received and initialed on March 6, 2012.[23] She testified that "pretty much all" of her interactions with him were related to that grievance and his concern that he had not received a response "in a timely manner."[24] Plaintiff never told her anything about the events that allegedly occurred at the Hospital, however, and never gave her a grievance against Defendant Powell related to those allegations.[25] Ms. Medlock testified had Plaintiff attempted to give her a grievance regarding his treatment by DOC officials at another facility, she would have accepted it, yet she has no memory of receiving such a grievance from Plaintiff.[26] The Court finds incredible the proposition that a grievance counselor would fail to recall an injured inmate's allegation that a Deputy Warden had forced him to lie in his own excrement over a multi-day period. Nor does the Court have any reason to doubt Ms. Medlock's trustworthiness.[27]

In contrast, Plaintiff's account contains several inconsistencies.[28] Although Plaintiff alleges he attempted to grieve the Hospital incident with Ms. Medlock but was unable to do so due to her misinformation, in his Complaint he represented he filed

---

[23] *Id.* at 71, 83.

[24] *Id.* at 88.

[25] *Id.* at 83, 88.

[26] *Id.* at 71.

[27] At the conclusion of the hearing, the Magistrate Judge briefly commented on the evidence, noting Ms. Medlock was an extremely credible witness and was hard to discredit based on her demeanor. *Id.* at 122. Although Plaintiff is entitled to a *de novo* review of the Report and Recommendation, the Court has read the complete transcript of the hearing and concurs with the Magistrate Judge's assessment.

[28] The Court also agrees with the Magistrate Judge's comment that Plaintiff's testimony was reasonably credible except when asked about his Amended Complaint, at which point he became evasive and defensive. *Id.* at 122-23.

both an informal and a formal grievance.[29] Additionally, in his Amended Complaint, Plaintiff labeled the Hospital incident as Claim Two.[30] Yet as to Claim Two, Plaintiff stated he in fact filed a grievance which had not been answered, contrary to his current allegation Ms. Medlock thwarted his attempt to file the grievance.[31] Based on the testimony from Plaintiff and Ms. Medlock, the Court finds Plaintiff never attempted to file a grievance about the Hospital incident.

The evidence presented at the Evidentiary Hearing shows that Plaintiff never attempted to file a grievance about the incident at Spalding Hospital at either SMU or Augusta State Medical Prison, and thus Plaintiff failed to comply with the DOC's grievance process.

### III. Waiver of Exhaustion Defense

Although the Court finds Plaintiff failed to exhaust his available administrative remedies, the Court must now determine whether Defendant waived the right to assert this defense because he failed to timely raise it. This is a question of first impression in the Eleventh Circuit.

In the Report and Recommendation, the Magistrate Judge determined a defendant does not waive the exhaustion defense by failing to raise it in the first responsive pleading. Plaintiff objects to the Magistrate Judge's reasoning and

[29] [Doc. 1] at 2.
[30] [Doc. 9-1] at 5.
[31] *Id.* at 2.

conclusion and argues that exhaustion must be raised in the first responsive pleading under Federal Rules of Evidence 12(h)(1) and 12(g)(2) for three reasons: (1) exhaustion closely resembles the waivable defense of improper venue; (2) other appellate courts have held exhaustion is subject to waiver; and (3) allowing defendants to raise the exhaustion defense after filing their first responsive pleading would undermine judicial economy.

Having thoroughly considered all aspects of this issue, although this case presents an extremely close question, the Court finds exhaustion is more comparable to subject matter jurisdiction and thus ultimately agrees with the Magistrate Judge that a defendant does not waive the exhaustion defense by failing to raise it in the first responsive pleading.

**BACKGROUND**

On July 16, 2012, Plaintiff filed his Complaint against multiple GDCP officials, including Defendant Powell, regarding both his injuries during the prison riot and Powell's alleged conduct at Spalding Hospital.[32] On November 9, 2012, Defendant Powell, along with Defendants Humphrey and Bishop, filed a pre-answer Motion to Dismiss based on (1) Plaintiff's failure to state a claim of deliberate indifference to his safety prior to the prison riot and (2) Defendants' qualified immunity.[33] Plaintiff filed an Amended Complaint, and Defendants filed a second pre-answer Motion to Dismiss

[32] [Doc. 1].
[33] [Doc. 17].

on January 4, 2013, again seeking dismissal based on Plaintiff's failure to state a claim and Defendants' qualified immunity.[34]

The Court subsequently adopted the Magistrate Judge's Recommendation to grant the Defendants' Motions to Dismiss based on (1) Plaintiff's failure to allege sufficient facts showing Defendants were deliberately indifferent to his safety when they failed to protect him from Watson, and (2) Defendant Powell's qualified immunity.[35] Plaintiff appealed, and the Eleventh Circuit Court of Appeals affirmed the dismissal of Plaintiff's failure to protect claim, reversed the finding that Defendant Powell was entitled to qualified immunity, and remanded the case for further proceedings on Plaintiff's Eighth Amendment deliberate indifference claim for nominal damages against Defendant Powell, arising out of Plaintiff's time in Spalding County Regional Hospital.[36]

On remand, Defendant Powell filed his Answer to Plaintiff's Amended Complaint on October 15, 2015. Although it was his third responsive pleading, Defendant raised the failure to exhaust administrative remedies defense for the first time.[37] Four days later, on October 19, Defendant Powell filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing Plaintiff

---

[34] [Doc. 33]. Defendant McMillan filed a separate Motion to Dismiss. [Doc. 39].

[35] [Doc. 54].

[36] *Brooks v. Warden*, 800 F.3d 1295, 1298 (11th Cir. 2015).

[37] [Doc. 84].

failed to exhaust his administrative remedies.[38] Plaintiff contends Defendant has waived his right to assert this affirmative defense because he did not timely raise it. The Court disagrees.

**ANALYSIS**

Pursuant to the PLRA, unexhausted claims cannot be brought in federal court.[39] The Supreme Court has held "failure to exhaust is an affirmative defense under the PLRA."[40] Under Rule 12, some affirmative defenses are waivable and some are not waivable. However, the Eleventh Circuit Court of Appeals has not yet resolved the issue of whether a defendant may waive the affirmative defense of failure to exhaust by failing to timely raise it. As explained below, the Court finds exhaustion is most similar to subject matter jurisdiction and holds a defendant does not waive the exhaustion defense by failing to raise it in the first responsive pleading, which better comports with Eleventh Circuit precedent and the purpose of the exhaustion requirement.

In the Eleventh Circuit, exhaustion of administrative remedies is a matter in abatement that generally does not address the merits of the case.[41] Thus, the exhaustion defense "is not ordinarily the proper subject for a summary judgment" but instead "should be raised in a motion to dismiss, or be treated as such if raised in a motion for

---

[38] [Doc. 86].
[39] *Jones*, 549 U.S. at 211 (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).
[40] *Id.* at 216.
[41] *Bryant*, 530 F.3d 1368, 1374 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1360 at 78 n.15 (3d ed. 2004)).

summary judgment."[42] Because the defendant must raise exhaustion in a motion to dismiss, the Eleventh Circuit treats failure to exhaust as an unenumerated defense pursuant to Federal Rule of Civil Procedure 12(b).[43]

"When a court 'treats [a] motion as having been brought under Rule 12(b), then it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion.'"[44] Under Rules 12(h)(1) and 12(g)(2), a defendant waives the following 12(b) defenses by failing to timely raise them in the first responsive pleading: (2) lack of personal jurisdiction, (3) improper venue, (4) insufficient process, and (5) insufficient service of process.[45] In contrast, a party may raise a court's lack of subject matter jurisdiction at any time during the action, even on appeal.[46] Thus, the Court must identify the most analogous 12(b) defenses to exhaustion to determine whether the defendant may waive the exhaustion defense.

Because the Eleventh Circuit treats exhaustion procedurally like lack of subject matter jurisdiction, the Court finds subject matter jurisdiction is the most analogous Rule 12(b) defense. In *Bryant v. Rich*, the Eleventh Circuit observed the exhaustion

---

[42] *Id.* at 1374-75 (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). In a footnote in the Report and Recommendation, the Magistrate Judge improperly stated the Court could construe Defendant's Motion for Judgment on the Pleadings for failure to exhaust as a motion for summary judgment. [Doc. 110] at 24 n.9. As the Court discusses below, however, it is not uncommon in this Circuit for courts to address the exhaustion issue at summary judgment by construing the relevant portion of the motion for summary judgment as a motion to dismiss.

[43] *Id.* at 1375 (holding "exhaustion should be decided on a Rule 12(b) motion to dismiss" even though "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)").

[44] *Id.* at 1376 (quoting 5C Wright & Miller, § 1360 at 91).

[45] Fed. R. Civ. P. 12(h)(1).

[46] *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

defense "is like a defense for lack of jurisdiction" in that both are matters in abatement.[47] The Court also found them comparable because for both defenses, "a judge may make factual findings . . . on a Rule 12(b)(1) motion to dismiss."[48] Likewise, in *Turner*, the Eleventh Circuit compared exhaustion to subject matter jurisdiction because exhaustion is a matter in abatement, and thus "procedurally . . . treated 'like a defense for lack of jurisdiction.'"[49] Because exhaustion is treated procedurally like subject matter jurisdiction, it follows that lack of subject matter jurisdiction is the most analogous Rule 12(b) defense.

Moreover, exhaustion more closely resembles subject matter jurisdiction than personal jurisdiction because courts cannot hear unexhausted claims. The Supreme Court has made clear "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims *cannot* be brought in court."[50] While subject matter jurisdiction refers to a court's authority over "classes of cases," personal jurisdiction refers to the court's authority over "persons."[51] Because the PLRA prohibits courts from hearing unexhausted claims, the exhaustion requirement is more like a rule identifying the classes of cases within a court's authority than a rule identifying the persons within a court's authority. Accordingly, exhaustion is more analogous to subject matter jurisdiction than personal jurisdiction.

---

[47] *Bryant*, 530 F.3d at 1374.
[48] *Id.* at 1376.
[49] *Turner*, 541 F.3d at 1082.
[50] *Jones*, 549 U.S. at 211 (citing *Porter*, 534 U.S. at 524) (emphasis added).
[51] *Santiago-Lugo v. Warden*, 785 F.3d 467, 472 (11th Cir. 2015).

Plaintiff argues exhaustion and subject matter jurisdiction are not comparable because failure to exhaust does not deprive a court of subject matter jurisdiction. While it is true that failure to exhaust administrative remedies is not a jurisdictional prerequisite, the two defenses are nevertheless similar.[52] The question before the Court is one of analogy, not identity. Failure to exhaust administrative remedies can be similar to lack of subject matter jurisdiction without being identical to it. Based on the Eleventh Circuit's mandate to treat exhaustion procedurally like a lack of jurisdiction, and the Court's inability to hear unexhausted claims, subject matter jurisdiction is the most analogous Rule 12(b) defense.

Additionally, in two unpublished decisions, the Eleventh Circuit has allowed defendants to raise exhaustion at the summary judgment stage.[53] As noted above, the Eleventh Circuit in *Bryant* indicated the exhaustion defense should be raised in a motion to dismiss "or be treated as such if raised in a motion for summary judgment."[54] As the Magistrate Judge notes, the Eleventh Circuit in *Trias v. Florida Dep't of Corr.* affirmed the district court's dismissal of the plaintiff's Section 1983 complaint even

---

[52] *Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (noting it is "clear that the PLRA exhaustion requirement is not jurisdictional"). *See also Bryant*, 530 F.3d at 1374 n.10. Additionally, in the context of 28 U.S.C. § 2241 exhaustion, the Eleventh Circuit has held "[i]t is no longer the law of this circuit that exhaustion of administrative remedies is a jurisdictional requirement." *Santiago-Lugo*, 785 F.3d at 474-75.

[53] *Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 952 (11th Cir. 2016) (per curiam); *Trias v. Florida Dep't of Corr.*, 587 F. App'x 531, 534 (11th Cir. 2014) (per curiam).

[54] *Bryant*, 530 F.3d at 1374-75 (quoting *Ritza*, 837 F.2d at 368-69).

though the defendant failed to raise exhaustion in her first Rule 12 motion.[55] Instead, the defendant raised exhaustion in her answer and briefed it in her motion for summary judgment, which the district court properly construed as a motion to dismiss.[56] More recently, in *Maldonado v. Unnamed Defendant*, the defendant raised exhaustion in a motion for summary judgment after discovery commenced.[57] On appeal, the plaintiff argued the district court improperly construed the motion for summary judgment as a Rule 12(b) motion, but the Eleventh Circuit held the court addressed the matter correctly.[58] Because it appears a defendant may raise the exhaustion defense at the summary judgment stage, a defendant does not waive the defense by failing to raise it in the first responsive pleading.

To support his argument that exhaustion is waivable, Plaintiff relies on *Whatley v. Smith*, where the Eleventh Circuit held a prison may waive the exhaustion defense.[59] However, this case is wholly inapposite. The waiver at issue in *Whatley* concerned the prison's waiver of its internal policies by considering the merits of a prisoner's procedurally flawed grievance, not the failure to timely raise a 12(b) defense.[60] Whether a prison may waive its internal procedures has no relevance to the issue before the

---

[55] *Trias*, 587 F. App'x at 534. *See also* [Doc. 110] at 23-24 (citing *Trias v. Florida Dep't of Corr.*, No. 1:11-cv-24003-UU (S.D. Fla. June 24, 2012), ECF No. 21).
[56] *Trias*, 587 F. App'x at 534.
[57] *Maldonado*, 648 F. App'x at 947-48.
[58] *Id.* at 952 (holding "[t]he district judge correctly applied our precedent in treating the exhaustion defense as an unenumerated Rule 12(b) motion").
[59] 802 F.3d 1205, 1213-15 (11th Cir. 2015).
[60] *Id.* at 1214-15.

Court.

Likewise, Plaintiff cites several cases wherein other appellate courts have held exhaustion is a waivable defense.[61] However, these appellate courts do not address the issue before the Court. The other Circuits address the exhaustion defense on a motion for summary judgment, and it appears only the Eleventh Circuit continues to treat exhaustion as an unenumerated 12(b) defense.[62] Consequently, the other Circuits have not addressed the question of whether a defendant waives exhaustion by failing to assert it in the first responsive pleading.

Furthermore, allowing a defendant to waive the exhaustion defense by failing to timely raise it would undermine the policies underlying the PLRA's exhaustion requirement. The exhaustion requirement provides an administrative agency "an opportunity to correct its own mistakes . . . before it is haled into federal court," thereby protecting agency authority.[63] Allowing an agency to handle claims internally also promotes efficiency because "[c]laims generally can be resolved much more quickly and

---

[61] *See Johnson v. Testman*, 380 F.3d 691, 695 (2nd Cir. 2004) (holding "[w]e today join [the Seventh and Eighth Circuits] and hold that this defense is waiveable"); *Jerry-El v. Beard*, 419 F. App'x 260, 264 (3rd Cir. 2011) (per curiam) (holding "exhaustion is an affirmative defense, which may be waived if not pleaded by the defendant"); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (holding exhaustion is "a defense belonging to the state that is waived if not asserted"); *Perez v. Wisc. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) (noting "[d]efendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations"); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001) (holding failure to exhaust does not deprive the court of subject matter jurisdiction, so "reliance on the PLRA exhaustion requirement can be waived"); *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (noting "a defect in subject-matter jurisdiction, unlike a failure to exhaust, is a nonwaivable defect").

[62] *Albino*, 747 F.3d at 1170 (noting "[n]ow that we have joined these circuits, only the Eleventh Circuit employs an unenumerated Rule 12(b) motion to decide exhaustion").

[63] *Woodford*, 548 U.S. at 89.

economically in proceedings before an agency than in litigation in federal court."[64] By filing suit without exhausting his administrative remedies, Plaintiff has deprived the Georgia DOC of the opportunity to provide him relief from Defendant's alleged misconduct prior to being brought before this Court. Consequently, the parties and the Court have expended considerable time and resources on this litigation and, if the claim goes forward, will undoubtedly expend even more. Allowing Plaintiff's claim to proceed would diminish the DOC's authority and encourage inefficiency.

Finally, no Eleventh Circuit case law put Defendant Powell on notice that he risked waiving the defense. As noted above, this issue is one of first impression. Because the Supreme Court has made clear unexhausted claims cannot be brought in federal court, a defendant has no reason to suspect he waives the exhaustion defense by failing to assert it in his first responsive pleading.[65] This problem is particularly acute in light of the numerous non-PLRA cases cited in the Report and Recommendation wherein the Eleventh Circuit has held failure to exhaust does, in fact, deprive a district court of subject matter jurisdiction.[66] Based on the unsettled nature of the case law, Defendant should not be punished for failing to raise exhaustion in his first responsive pleading.

Thus, the Court holds a defendant does not waive the failure to exhaust

---

[64] *Id.*
[65] *Jones*, 549 U.S. at 211 (citing *Porter*, 534 U.S. at 524).
[66] [Doc. 110] at 22 n.8.

administrative remedies defense by failing to timely raise it under Rule 12. Although exhaustion is an affirmative defense that a defendant ultimately waives by simply never asserting it, a defendant is not required to raise it in the first responsive pleading. Accordingly, Defendant Powell did not waive the defense when he raised it for the first time in his third Rule 12 motion. Plaintiff's Objections are **OVERRULED**.

**CONCLUSION**

For the reasons set forth above, the Report and Recommendation [Doc. 110] is **HEREBY ADOPTED**, Defendant's Motion for Judgment on the Pleadings [Doc. 86] is **GRANTED** and Defendant Powell is **DISMISSED**, and Plaintiff's Motion for Leave to File a Second Amended Complaint [Doc. 95] is **DENIED** as **FUTILE**.

**SO ORDERED**, this 30th day of September, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT